TIMOTHY ELY v. BUSH, LIPPINCOTT & CO.

*Vendor and Vendee—Mortgage—Statute of Presumptions and Limitations.*

1. Where A and B, joint vendors of land, take a mortgage and notes to secure the price, payable to each according to their respective shares; *Held,* that

a payment to A, who is also agent of B, discharges proportionately the debt to each, and a subsequent assignee of B cannot have an application of said payment wholly to A's interest.

2. Where, in such case, there has been a verbal agreement between the vendors and an assignee of the vendee to reduce the debt and change or release the respective liabilities of the parties, which agreement was only in part carried out; *Held*, in an action to enforce the mortgage and collect the unpaid residue of the reduced debt, if there are valid subsisting judgments for the unpaid mortgage debt and the vendee does not deny the liability, the assignee of B cannot insist upon the statute of presumption of payment from lapse of time as to the original debt, nor upon a bar by the act of limitations (C. C. P., §31), as to the reduced debt assumed by the assignee of the vendee.

(*Harshaw* v. *McKesson*, 66 N. C., 266, cited and approved).

CIVIL ACTION to foreclose a mortgage tried at Spring Term, 1883, of PASQUOTANK Superior Court, before *Shepherd J.*

Verdict and judgment for plaintiff; appeal by defendants.

*Messrs. J. W. Albertson* and *Battle & Mordecai*, for plaintiff.
*Messrs. Starke & Martin*, for defendants.

SMITH, C. J. In the month of September, 1866, Joseph S. Cannon and Thomas D. Warren, then owning, as tenants in common in unequal shares, a large tract of land, known as the "Great Park" estate, in the counties of Pasquotank and Perquimans, sold and conveyed the same to William Underwood and his wife, Lorena, for the recited consideration of three dollars per acre, and describing the land by definite metes and bounds, as containing by actual survey twenty-eight thousand acres, each warranting the title to his respective share. On the 1st day of August, 1868, the land was reconveyed by the grantees to the grantors, by deed of mortgage, to secure their six several notes, given for the purchase money contracted to be paid, in fact, instead of that mentioned in the deed to the latter, all bearing date and interest from that day, whereof three, each in the sum of $6,400, are payable to the said Joseph S. Cannon in one,

two and three years, and three others, each in the sum of $2,000, are payable in like manner to the said Thomas D. Warren.

In the year 1869, William Underwood and wife, and Joseph Underwood and wife, by their joint deed, reciting that the "Great Park" estate and several other tracts described therein had been bought by the grantors in behalf of and in the exercise of an agency for the Land and Lumber Company, a corporation formed under the laws of this state, conveyed said lands for a nominal consideration to the company. The deed has no specific date, but was proved for registration on the 25th day of September of that year.

To avoid controversy growing out of the execution of the first conveyance, an agreement was, on February 13th, 1872, entered into between the company and the grantors, Cannon and Warren, by the terms of which the latter stipulated to release to the former all claim and title to the land under the mortgage; to surrender their claims on said William Underwood for the purchase money due from him, represented in his several notes, except they retain a draft of his for a portion of it, then in the hands of said Cannon, and to reduce the debt outside of the draft to the sum of $15,665; and in consideration thereof, they are to be relieved of their obligation as to the quantity and title of the land, it having been ascertained that there was a deficiency in the supposed area of the land to the extent of about ten thousand acres; and the company agrees to assume the reduced indebtedness, estimated as of January 1st, preceding, and therefor to give four several drafts, to become due at short intervals, in different sums, the equivalent of $5,000, paid as of that date, but increased by accruing interest to the date of their maturity, and to execute notes for the residue in varying sums, with interest to accrue until they become payable on the 1st day of January of the successive years 1873, 1874, 1875 and 1876.

These notes were moreover to be secured by a deed in trust executed by the company, and conveying the said land; and this and the other written instruments, to carry the agreement into

effect, were to be delivered into the hands of a designated person for surrender to the parties entitled, upon the fulfillment of their several stipulations.

The drafts were drawn and paid to the said Cannon at maturity, and the notes and deed in trust were executed and placed in the hands of the selected holder, but not the release; nor did the said Cannon and Warren, by surrendering the evidences of the indebtedness of said Underwood, or giving a release in order to his discharge, comply with their undertaking in this behalf.

Cannon died in April, 1882, leaving a will and appointing an executor, who has assigned his interest and claim to the fund and the mortgage given to secure it to the plaintiff in the action.

It is stated in the answer, and not denied, that the defendants and their deceased partner, constituting the firm of Cannon, Bush & Lippincott, purchased and acquired the share of said Warren in the land, after the payment of the drafts executed under the compromise agreement. Since which sale the said Warren has died intestate, and no letters of administration have issued upon his estate. The shares held by him were 5-21 parts, and by Cannon 16-21 parts of the whole.

The action was begun on August 31, 1880, and the plaintiff seeks for a judgment of condemnation and sale of the land embraced in the mortgage to satisfy his share, to-wit: sixteen twenty-one parts of the sum of $10,665, the residue of the amount agreed to be taken for the mortgage debt, with interest thereon from January 1, 1872.

The defendant Underwood, in his answer, makes no opposition to the decree for relief.

The foregoing are the material facts gathered from the pleadings and the findings of the jury upon issues submitted to them.

The plaintiff had judgment for the sale of the land for the satisfaction of his share of the sum due under the compromise contract, unless the same was paid before a date fixed in the judgment, and therefrom the defendants interested in the premises appeal to this court.

The exceptions presented in the record and material to be considered will be stated and examined separately.

I. The defendants insist that the assignee's share should be reduced by the full sum of $5,000, and not by his ratable part only, inasmuch as all the fund went into the hands of Cannon.

The appropriation, in our opinion, was a proper and legal appropriation of the payment. The answer states that the purchase was made by the firm after the receipt of the money upon the drafts of Warren's "share or claim against the 'Great Park' estate," according to the adjustment attempted, but not perfected, under the agreement of February, 1872, which, in the absence of the instrument or evidence of the terms of the verbal assignment, we understand to mean the unsatisfied claim resting upon the land due to Warren. This is an application fortified by what is said in the amended answer, that the notes which were to be given were divided between the creditors, the said Warren having his separated from those of his associate, and thus placing them in the hands of the depositary to be delivered under the contract to them respectively, and that *those executed for the benefit of Warren* have been purchased by defendants Cannon, Bush & Lippincott.

The drafts were given for the benefit of both parties, and the money paid in discharge belonged to both, according to their respective interests. As Cannon acted for himself, and as agent of Warren, in making the contract and in taking the drafts, this fund was their common property, when received by either; and the other could call on him for his own share. This demand and right to a distribution of the money among themselves constitutes in no just sense a "share or claim" *against the land*, so as to pass over to the purchasing firm and vest in the surviving members. The money thus received was therefore properly applied in discharge of so much of the general indebtedness as remained, and the land subjected to the assigned part of Cannon held by the plaintiff.

II. The defendants further insist that the statutory presump-

tion of payment is raised by the lapse of time as to the original indebtedness of Underwood, and that assumed by the corporation in place of it is barred by the act of limitations. The answer to this objection is obvious.

1. The debtor, Underwood, in his answer admits that the notes have not been paid in full, while some partial payments have been made.

2. The notes have been reduced to judgment in the circuit court of the United States; two of them at June term, 1870, and the other at the same term in 1872, which, as the case states, are alive and in full force.

3. The action is not to enforce the obligations of the corporation under the contract made by it in February, 1872, but so much of the mortgage debt incurred by Underwood as was agreed to be accepted by the creditors in discharge of the whole, and it is not material to inquire whether the undertaking of the company be, or not, barred by the statute.

4. If the limitations prescribed in the Code be applicable to the transaction, and were available to the other defendants, when not set up as a defence by the debtors, the mortgage is protected by the recognition of the indebtedness on the part of the corporation then owning the land encumbered, by the third clause of section 31 C. C. P., in the payment subsequently made of the drafts.

5. Unless express provisions be made for an earlier foreclosure and sale, when debts' are payable in installments, the power of closing the trust is conferred to be exercised upon the failure to pay the last installment, and the forfeiture does not sooner arise, as is held in *Harshaw* v. *McKesson*, 66 N. C., 266.

We see no error in the other exceptions to the rulings of the court in respect to the evidence, and the remarks of counsel, and, indeed, they are not pressed in the argument for the appellants.

The essential defect in the argument consists in a misapprehension of the plaintiff's grounds for relief, as presented in his complaint. The action rests for support wholly upon the indebt-

edness recognized and evidenced by notes in the mortgage of 1868 and the agreement of the company in modifying it in 1872, never perfected by the compliance of either party with its terms, is referred to only as reducing the demand of the plaintiff, he assenting to abide by the reduction then agreed on. Of this the appellants cannot complain, for the value of their equity of redemption in the premises is proportionately increased thereby.

There is no error. Judgment will be entered in accordance with this opinion and the cause remanded.

No error.                                    Affirmed.